The opinion of the Court was delivered by
Withers, J.
It is a ground of appeal that after the trial was entered upon, the Coroner of the District, who was of the jury, was withdrawn and another substituted in his place.
*374 The facts were, that while the first witness was under examination, it was made known to the Court, that a death had occurred by means of a homicide committed in the vicinity of the Court House, and the Coroner, who was a member of the jury to which this case had been committed, was needed to render official service in that exigency. Thereupon the presiding Judge caused to be presented to the counsel a supernumerary who had heard all that had been said in the cause, and, on inquiry, was answered, that there was no objection to him.
This ground of appeal rests upon the sole fact, that the consent of the plaintiff’s counsel was not formally obtained to the withdrawal of the Coroner, though no express objection was made to that; and the case of Greer v. Norville, 3 Hill, 262, is relied on for authority.
There is a manifest diversity between the grounds on which that case and the present rest. The juryman withdrawn in that case was objected to by the plaintiffs’ counsel on the allegation that he was inimical to him, the counsel, and he desired his withdrawal — the opposing counsel objected to it — the juryman said nothing, and the Judge, hearing he was Tax Collector, (but it does not appear he was engaged, then in the duties of his office,) gave him leave to withdraw, and he did so. It was held to- have been erroneous.
In the opinion delivered, much is said about the right of a juryman, not disqualified, to serve, and stress is laid upon the conception, that in the case before the Court, and such as resembled it, the right of a juryman might be invaded. Importance is given to the distinction between a juryman requesting discharge and one removed or rather driven to withdraw, without such request. Various illustrations are presented of the idea intended to be advanced, and it is added, “after a trial has commenced and the jury is charged with the case, no juror can withdraw except from necessity, the consent of the parties, or the permission of the law; as where *375 a juryman is taken ill, is withdrawn to make a mistrial, or where the term has expired before the termination of the case.” It would be dangerous to hold, that the examples put, of necessity, or what is called the permission of the law, were exhaustive of the subjects. The illness of a juryman himself would hardly present a greater necessity, or be more disqualifying as to a patient and sedate consideration of evidence, than the illness of his wife or child, or other domestic casuality. Again, it might turn out that the progress of the trial for the first time disclosed a clear and disqualifying interest of a juryman in the cause. If another were present and heard all the evidence, we see no reason to hold that such circumstance should not furnish as valid a ground as any other to substitute a supernumerary.
We think it would not be straining the truth to say that there was a sufficient legal necessity in this case to justify what was done, if it so appeared to the Circuit Judge. The coroner alone could hold the inquest which was necessary. It seems to be a mistake to suppose that a magistrate could have done so; for he is so authorized only, when the coroner is “ sick, or absent, or at a greater distance than fifteen miles from the proper place for such inquiry, or where the office is vacant,” Act of Assembly, 1839, 11 Stat. 23. Neither of such contingencies existed in the present instance.
In addition to all this, the presiding Judge had no reason to suppose, and he, in fact, reports that he did not suppose, either party had any objection to the substitution ; and it is manifest that the juryman withdrawn, did not retire unwillingly. At the time of the discharge of the coroner, no one could foresee, had he been retained, how long the inquest might have been postponed.
It thus appears, we think, that the case from 3 Hill and the present, differ in the substratum, and the former does not furnish a ruling authority for the latter.
The second ground relates to the competency of the runner *376 and conductor of the freight train which killed the negro, the subject of this suit. The first paper presented by the President and Secretary of the Eailroad Company was not a release, because though there was a seal to it, the same was not made for that paper, the seal was not accessible to make it, nor was it recited in the paper that it was executed under the seal of the Corporation. Another instrument, on the same paper, was then executed by the President and Secretary, and both handed to the witnesses. The last instrument was an acknowledgment of satisfaction with the conduct of the witnesses in the transaction which produced the death of the negro, and stipulated an acquittance of them of all liability over, to the Company therefor. No seal was attached. The witnesses were -then sworn and examined.
This last paper (supposing there was no virtue in the first) was sufficient to render the witnesses competent. Whether it could be pleaded as accord and satisfaction is not the necessary and exclusive test. If the instrument was binding upon the Corporation, no recovery could be had against the witnesses in the face of the agreement they held when offered as evidence. The argument appears to concede this, but urges that it was not binding on the corporation either because it was not ratified and authenticated by the corporate seal; or, if that could be dispensed with, yet by the Charter (Sec. 21, 11 Stat. 330,) the President and Directors only could execute such a paper as a valid instrument. By the charter as cited,- the President and Directors (whose style is, “ The Direction,”) have power “ to make all contracts and agreements in behalf of the Company, and to do and perform all other lawful acts and deeds, which, by the by-laws of the corporation, they may be authorized and required to do and perform; and the acts or contracts of the Direction, authorized," (perhaps authenticated may have- been meant) “ by the signatures of the President and Secretary, shall be binding on the Company, without seal." Not merely was the act or agree *377 ment in question “ authorized” by such signatures but the President and Secretary performed the act, made the agreement, directly and in person; and, under the words cf the charter above cited, it cannot be doubted, that what they did was obligatory on the Company. This supersedes all occasion to consider when a corporation must act by and under its seal, and what proof of the seal the law may in general demand.
The seventh and last ground is met by the recent decision of Josey v. The Wilmington and M. B. B. Co., and is not pressed. The residue of the grounds are answered by the verdict of the jury on the facts, or by the case of Richardson v. The Wilmington and M. R. Road Co., and the previous cases upon which that rested.
As to the rule touching the mere presumption of negligence, or the question upon which party is the onus of making proof touching negligence, it is of very little practical importance in this case, because the evidence placed the inquiry on grounds far in advance of mere presumption, for all the facts that bore upon the matter were before the jury ; and the , plaintiff had the benefit of the appropriate rule, “ that care proportionate to the dangerous nature of the machinery which they used was always required of the agents of the Company, and should be exerted to avoid, if possible, the doing of hurt to a human being who exposed himself to danger.”
We believe the plaintiff has had the law properly expounded, and he must endure a defeat upon the facts before the jury-
A new trial is, therefore, refused.
Wardlaw, Glover and Munro, JJ., concurred.
O’Neall and Whitner, JJ., Directors of the Company, gave no opinion.

Motion dismissed.